UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EDMOND ROARTY,

               Plaintiff,

    vs.

AFA PROTECTIVE SYSTEMS, INC., RAYMOND      **MEMORANDUM & ORDER**
S. GREENBERGER, PHILIP KLEINMAN,         06 CV 0152 (DRH)(WDW)
REGINALD C. MILLER, in their individual
capacities and in their capacities as Trustees and Plan
Administrators of the AFA Retirement Plans, JOHN
DOE, [the committee Appointed by the Board
of Directors of AFA Protective Systems, Inc.],
BOARD OF DIRECTORS OF AFA PROTECTIVE
SERVICES, INC., PENSION PLAN FOR
HOURLY UNION EMPLOYEES OF AFA
PROTECTIVE SYSTEMS, INC., and AFA
PROTECTIVE SYSTEMS, INC. FUNDED
PENSION PLAN NOS. 1 and 2,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**APPEARANCES:**

**For the Plaintiff:**

**THOMPSON WIGDOR & GILLY LLP**
350 Fifth Avenue, Suite 5720
New York, New York 10118
By: Kathryn J. Webber, Esq..

**BAILEY & EHRENBERG**
1155 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
By: Jason H. Ehrenberg, Esq.

1

**For the Defendants:**

**EPSTEIN BECKER & GREEN, P.C.**
Attorneys for Defendants
250 Park Avenue
New York, New York 10177
By: Clare M. Sproule, Esq.


**HURLEY, Senior District Judge:**

Plaintiff Edmond Roarty ("Plaintiff" or "Roarty") commenced this action under the

Employees Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001 et

seq., asserting claims for violation of "statutory provisions" and "clarification of rights to"

pension benefits, as well as breaches of fiduciary duties. Named as defendants are his former

employer, AFA Protective Systems, Inc. ("AFA"), the "Pension Plan for Hourly Union

Employees of AFA Protective Systems, Inc." and "AFA Protective Systems Inc. Funded Pension

Plan Nos. 1 and 2" (collectively "Defendant Plans"), as well as the Trustees and Administrators

of the Plans, and AFA's Board of Directors. Presently, before the Court is Defendants' motion

for summary judgment. For the reasons set forth below, the motion is granted.

**Background**

The following facts are undisputed unless otherwise noted.

<u>Plaintiff's Employment with AFA</u>

Plaintiff is a former employee of AFA, a corporation located in Syosset, New York.

Roarty began his employment at AFA as a union employee on January 2, 1963. He worked as an

apprentice, and then journeyman electrician, until April 15, 1969 when he became acting

Construction Assistant Foreman. As Assistant Foreman, Roarty remained a member of the

2

bargaining unit. After approximately one year as Assistant Foreman, Roarty became a member

of management and remained a management employee through January 1972 when he left

AFA's employ for about five years for reasons other than retirement. On or about January 3,

1977, Roarty returned to AFA as a management employee. "After leaving the company in 1972,

and prior to his returning to the company in 1977, [Roarty] was informed by the Company that

his prior employment would be 'bridged' with his then new employment so as to make him

'vested' within the meaning of Defendant Plans."[1] Roarty worked into December 1977 when he

resigned. He did not work for AFA during 1978 through late July 1986. He again became

employed by AFA from July 28, 1986 through December 1986, at which time he resigned. In

total, Roarty worked on and off for AFA for over forty (40) quarters. Plaintiff was born in 1942

and did not reach the age of 65 until 2007.

AFA's Plans

Effective January 1, 1967, AFA established the Union Plan. As amended and restated in

1985, the plan[2] provides that: "A Participant's vested percentage shall be (a) 0 (zero) % prior to

his completion of ten (10) years of Service, and (b) 100% on or after the completion of ten (10)

Years of Service." (Greenberger Aff. Ex. 1 ¶ 8.1.) The Union Plan provides a formula for

determining a participant's "Years of Service." A Year of Service is defined as "a Plan Year

during which an individual completed at least 1,000 Hours of Service." (*Id.* at ¶ 8.4.) The Union

---

[1] Pl.'s Resp to 56.1 Statement at p. 7 ¶ 23.

[2] Plaintiff admits that the version of the Union Plan provided to him and relied upon by
the administrator contains the provisions noted. Plaintiff disputes, however, that these provisions
are contained in the version of the plan in effect during his employment with AFA. The Court
shall address this issue further *infra*.

Plan also provides that service does not include, among other things, periods of employment rendered by an individual "prior to its effective date . . . ." (*Id.* at ¶ 2.32.) According to the Union Plan, "If a Participant's service terminates prior to any date which could be a Retirement Date for any reason other than death or retirement (as provided in articles 6, 7, and 9) or transfers to non-Eligible employment, prior to his completion of ten (10) years of service, no benefit shall be payable under this Plan." (*Id.* at ¶ 8.4.) It also provides that "Years of Service before any Break in Service shall be disregarded if he had not then completed ten (10) Years of Service and if the number of consecutive Plan Years in which the Participant incurred a Break in Service equals or exceeds the greater of five or the aggregate number of his Years of Service prior to such Break in Service (excluding any years of Service previously disregarded under this Section)." (*Id.*) The Union Plan further provides that "Years of Service completed prior to January 1, 1976 (the ERISA effective date), shall be disregarded if such service would have been disregarded under the rules of the Plan with regard to Breaks in Service as in effect prior to January 1, 1976." (*Id.*)

AFA established a Non-union Plan as well. The Non-union Plan has an effective date of January 1, 1968 and was terminated in December 1972. The Non-union Plan in effect when Plaintiff first became a member of management provides: "Any employee of the company as defined in Section I(6) is automatically a participant in the Funded Plan No. 2, but no retirement benefits shall be or become payable unless he or she is an employee at the time of retirement." Greenberger Aff., Ex. 2 § II.) It also provides that upon termination of or a complete discontinuance of contributions to the plan, "all participants shall be fully vested in their rights under the Plan to the extent then funded," and would be entitled to an allocation from the Plan

under certain circumstances. (*Id.* at § X.)  After a portion of the trust was allocated to retired employees, and those of retirement age, remaining assets would be paid to "all other participants who are employees at the time of the termination of the Plan." (*Id.*)

On December 31, 1972, AFA established the Non-union Money Purchase Plan (the "MPP") for salaried employees.  The MPP in effect when Plaintiff returned to AFA's employ in January 1977 provides that : "[t]he participation computation period beginning after a 1-year Break in Service shall be measured from the date on which an Employee again performs an Hour of Service." Greenberger Aff., Ex. 3, ¶ 1.55.)  It further provides that employees must complete one year of service as a condition of eligibility and that "[a]n Eligible Employee shall become a Participant effective as of the first day of the Plan Year next following the date on which such Employee met the eligibility requirements of section 3.1, provided said Employee was still employed on such date . . . ."  (*Id.* at ¶ 3.1.)  Under the MPP, the plan administrator has the "power and discretion" to construe the terms of the MPP and to determine all questions of benefit eligibility and participant status, and that any determination by the administrator is conclusive and binding upon all persons. (*Id.* at ¶2.6.)

Roarty's Benefits Eligibility Inquiries

In early 2005, approximately nineteen years after he last left his employment with AFA, Roarty orally requested that AFA provide a copy "of the pension plan that [he] was covered by." He was told by an AFA representative that the documents he wanted were "out to the printer" and that AFA had no record of his employment. It was suggested that Roarty obtain a record of his employment from the Social Security Administration.  Roarty did so, and then provided a copy to AFA.

In May 2005, Roarty received a copy of a letter to the Union Plan administrator from the plan's actuary which stated:

> We have examined Social Security's employment record of Edmond Roarty that he supplied to your office, a copy of which is enclosed. Based on the provisions of the negotiated Funded Pension Plan covering him and the other union employees in effect during his employment, it appears to us, and subject to review of legal counsel, he is not eligible for a benefit from the Plan, due to his not being employed from the second quarter of 1972 up to the end of 1975, a period of more than three years. Even in the case of an authorized absence or layoff, the maximum period allowed before an interruption of continuous service is incurred is 12 months.
>
> With the advent of ERISA on January 1, 1976, the Plan was permitted to continue the above pre-ERISA provisions regarding breaks in service. Therefore, even with his later service with AFA, he falls short of the ten years required by ERISA for vesting.

(Greenberger Aff., Ex. 5.)

Based on the information from the actuary, the plan administrator determined that Plaintiff was not eligible for a benefit from the Union Plan. The Union Plan provides that the plan administrator's decisions are final, binding and conclusive on questions of participation and benefit eligibility.

On June 17, 2005, Plaintiff wrote to AFA's Human Resources Director and requested "all pension plan information and coverage, concerning my periods of employment[,] [i]ncluding all information pertaining to the inception of the current pension plan." (*Id.*, Ex. 6.) On September 5, 2005, AFA's plan administrator received a letter from an attorney representing Roarty that requested all relevant Plan documents and requested that it be treated as a claim for benefits or an appeal of the prior denial of Plaintiff's claim for benefits. The letter specifically referenced the

prior denial of benefits under the Union Plan, but made no reference to the fact that Plaintiff was inquiring about his entitlement to a benefit under the management plan.  (*Id.*, Ex. 7.)

By letter dated September 12, 2005 the plan administrator for the Union Plan responded to counsel's letter, stating:

> Mr. Roarty made a request of Mr. Reginald C. Miller, ex president
> of AFA, to follow-up on whether he was entitled to benefits under
> AFA's Funded Pension Plan #1 [the Union Plan].  Mr Miller
> verbally forwarded that request to my office.  I asked my Director
> of Human Resources, Ms. Deborah Haber-Chance to follow-up
> with respect to this matter.  We did a search of our files and could
> not locate any of Mr. Roarty's personnel files prior to July 28, 1986
> when he was rehired as a salesman for just under five months. . . .
> On March 15, 2005 we received another letter from Mr. Roarty
> summarizing what he believed had taken place to date.

(*Id.*, Ex. 8.)  The letter went on to reiterate that Roarty had submitted social security records to the Company which were forwarded to the plan's actuary for analysis.  It concluded that it was determined that  Roarty did not qualify for pension benefits under the Union Plan "because he never satisfied the vesting requirements."  Included with the letter was a copy of the Union Plan's Summary Plan Description ("SPD"). (*Id.*)

On October 17, 2005, Plaintiff appealed the Union Plan's determination that he was not entitled to any benefit under the plan because he not met the Union Plan's vesting requirements. (*See id.*, Ex. 10.)  By letter dated October 26, 2005, the plan administrator responded to the "formal appeal" and once again denied Roarty's claim. (*See id.*, Ex. 11.)  Copies of the current Plan documents were included with the administrator's letter with the explanation that the "sole difference between those documents and the ones controlling are that the vesting requirements were changed to five years in 1986 to comply with the then new tax laws."  (*Id.*)  The letter

explained that benefits were denied because Roarty did not meet the vesting requirements of the Union Plan. The letter also stated that Plaintiff's service as a management employee for one year in 1977 and five months in 1986 did not satisfy the vesting requirements for the MPP. (*See id.*)

Thereafter, Roarty commenced this action asserting various claims under ERISA. These claims include that the Defendants breached their fiduciary duties pursuant to ERISA §§ 404(a)(1)(A) and 502(a)(3) by, inter alia, failing to consult relevant plan documents in determining his entitlement to benefits and failing to administer the Plans in accordance with the their written documents; the Defendants breached their fiduciary duty pursuant to ERISA §§ 409 and 503 by failing to comply with the claims procedure requirements or ERISA and the regulations promulgated thereunder; and the denial of his claim for benefits was arbitrary and capricious.

## Discussion

### I. Applicable Standards

#### A. Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party

demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the

plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

### B. Review of Administrator's Decisions Under ERISA

Where, as here, "a pension plan confers discretion on its administrators to determine plan eligibility and benefits, [a court] review[s] a decision of the administrators under the arbitrary and capricious standard." *Jiras v. Pension Plan of Make-Up Artists & Hairstylists Local 798*, 170 F.3d 162, 166 (2d Cir. 1999); *accord Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003). Under this standard, "a court may overturn a plan administrator's decision to deny benefits only if the decision was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* at 146. "Where the plan participant and the plan administrator offer "two competing yet reasonable interpretations of the plan, then [the court] must accept that offered by the administrators." *Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 489 (2d Cir. 2006) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995)). "[A] district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). In the event the administrator is operating under a conflict of interest, there is no change in the standard of review from deferential to *de novo*. *Metro. Life Ins. Co. v. Glenn*, –U.S. –, 128 S. Ct. 2343, 2350, (2008). Rather, "a reviewing court should consider that conflict

as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and . . . the significance of the factor will depend upon the circumstances of the particular case." *Id.* at −, 128 S. Ct. at 2346.[3]

## II.    Preliminary Issues

In opposing the motion for summary judgment, Plaintiff has raised certain objections to evidence submitted by defendants. The Court shall address these objections ad seriatim.

First, Plaintiff argues that "many of the material facts relied upon by Defendants are supported solely by the self-serving affidavit of Raymond Greenberger and are without documentary support." (Pl.'s Opp. Mem at 12.) Specifically, Plaintiff claims that the following facts deemed material by Defendants are not properly supported: (1) the effective date and termination date of the Non-Union Plan, (2) the existence of two pension plans beginning in 1967 and (3) "based on information from the [plan's actuary], the Plan Administrator determined that plaintiff was not eligible for a benefit from the Union Plan." (*Id.*) The Court rejects these contentions. The Greenberger affidavit states that it is based on personal knowledge and Plaintiff has submitted no evidence to suggest otherwise. Moreover, the documents submitted as exhibits to the affidavit do in fact support these factual assertions. By way of example, the Non-union Plan specifically states that "'Effective date' means January 1, 1968, the date this Plan became effective." (Greenberger Aff., Ex. 2 at p. 1.)

---

[3] Although Plaintiff argues that the Defendants "acted under a demonstrable conflict of interest," nowhere in his submissions does Plaintiff identify the nature of that conflict nor provide factual support for the assertion. To the extent he maintains de novo review is required because the plan administrator relied upon the plan actuary, the Court notes that the plan allows for reliance upon the written opinion of counsel, as well as actuaries and accountants engaged by the administrator. (Greenberger Aff. Ex. 1 at ¶ 14.3.)

The other issue that needs to be addressed is Plaintiff's objection to Defendants' reliance upon Plaintiff's deposition testimony. According to Plaintiff, any factual assertions made by Defendants' that are supported entirely by the deposition testimony should be disregarded because that testimony was "his best recollection today of events that occurred twenty years after he last worked for the Company (and/or otherwise disputed by Plaintiff)." ( Pl.'s Opp. Mem at 12.) Plaintiff was free to respond, as to any inquiry on areas where his memory was unclear, that he "could not recall." Having reviewed his deposition, the Court notes that there were instances where he did avail himself of that option. Plaintiff could also have corrected his testimony upon review of the transcript; he did not avail himself of that opportunity. Finally, there is no evidence before this Court that contradicts the factual information at issue. Only conclusory assertions, as opposed to evidence, has been presented to contradict deposition testimony at issue and conclusory assertions are insufficient to create a triable issue of fact. *See Patterson*, 375 F.3d at 219.

### III. The Determination That Plaintiff Was Not Vested Was Neither Arbitrary Nor Capricious

#### A. The Union Plan

The Union Plan has an effective date of January 1, 1967 and a provision that provides that in calculating years of service periods of employment rendered prior to the effective date are not included. Based on this provision, Plaintiff's years of service for vesting purposes began on January 1, 1967. Calculating his service from that date, there can be no dispute that he did not meet the ten (10) year vesting requirement of the plan. Accordingly, the determination that the

Plaintiff was not vested was neither arbitrary nor capricious.[4]

Plaintiff argues, however, that while the Union Plan before the Court and relied upon by the plan administrator contains a ten year vesting provision and excludes service prior to the effective date, that plan was not the version in effect during his employment. It is to this issue that the Court now turns.

Plaintiff's claim for benefits is asserted pursuant to 29 U.S.C. § 1132(a)(1)(B) which provides a cause of action to recover benefits or to enforce rights under the terms of a plan. "To adjudicate such a claim, a court necessarily must identify the 'terms of the plan.'" *Feifer v. Prudential Ins. Co. of Amer.*, 306 F.3d 1202, 1208 (2d Cir. 2002). Therein lies the crux of this case. Plaintiff maintains that the Defendants' decision is arbitrary and capricious because it relied upon "plan documents that appear not to be applicable" to his claim. (Pl.'s Opp. Mem at 2.) According to Plaintiff, the documents examined by Defendants are not from the relevant time frame. Defendants counter that they do not have, and were not required to maintain, plan documents that may have been in existence during Plaintiff's periods of employment. Moreover, they are argue that the plans they have submitted are relevant for purposes of demonstrating that Plaintiff did not acquire any vested rights under the plans which were in effect during Plaintiff's employment as the administrator knew that the relevant plan terms had not been changed over time. ( *See* Defs.' Supp. Brief at 6.) Finally, they argue that plaintiff has not submitted any proof that any plan document confers rights upon him.

---

[4] The Court would also note that Plaintiff's breaks in service precluded the Plaintiff from obtaining vested status. For example,29 U.S.C. § 1052 (b)(4)(A) provides years of service prior to any period of five consecutive 1-year breaks in service may be disregarded for vesting purposes. Plaintiff had such breaks in service when he was not employed by AFA from the end of January 1972 to and including 1976.

ERISA itself, although requiring that every benefit plan "provide for a procedure for amending such plan," 29 U.S.C. § 1102(b)(3), does not impose any obligation to maintain prior versions of a plan. The sole ERISA provision regarding document retention is contained in § 1027. That section is a general document retention provision which requires the retention of records for six years. It provides, in relevant part:

> Every person subject to a requirement to file any report or to certify any information therefor under this subchapter . . . shall maintain records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data from which the documents thus required may be verified, explained or clarified, and checked for accuracy and accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records available for examination for a period of not less than six years after the filing date of the documents based on information which they contain, or six years after the date on which such documents would have been filed but for an exemption or simplified reporting requirement under section 1024(a)92) . . . .

29 U.S.C. § 1027. Section 1027 would seem inconsistent with an obligation under ERISA to preserve prior versions of a plan for more than six years, especially where, as here, the plan predates the effective date of ERISA, to wit January 1, 1976.

The parties have not cited, and the court has not found, Second Circuit authority on whether there exists an obligation to maintain copies of prior versions of a benefit plan.[5] Plaintiff points to *Feifer*, where the court held that a program summary and its accompanying

---

[5] By Order dated July 21, 2008, the Court directed the filing of supplemental briefs addressing the following issues: "(1) Does either an employer or a plan administrator have an obligation to maintain copies of prior versions of a benefit plan, and if so, what is the source and extent of that obligation?; (2) What effect, if any, does the presence or absence of an obligation to maintain versions of a benefit plan have on the analysis of whether the decision to deny benefits was arbitrary and capricious?; and (3) Which party has the burden of proving what the terms of the relevant plan are and how may it satisfy its burden?" (Docket No. 48.)

memorandum were "the plan" for purposes of a claim for benefits where the program summary was the only document in the record that existed during the relevant period of time that described employee benefits. While *Feifer* confirms ERISA's requirement that plans "must be established and maintained pursuant to a written instrument" 29 U.S.C. §1102, it does not address the obligation once a plan has been amended to maintain prior versions of a plan. Nor does *Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177 (E.D.N.Y. 2005) (Boyle, M.J.), *aff'd,* Case No. 02-CV-4530 (E.D.N.Y. May 18, 2006) (Spatt J.), also relied on by Plaintiff. *Izzo* involved discovery sanctions imposed after the defendants therein had been ordered, but failed, to produce an earlier version of a pension plan they contended was relevant and had previously stated they possessed.

Courts have rejected ERISA claims where the claims were based on requests for outdated plan documents or previous versions of a benefit plan. *See, e.g., Shields v. Local 705, Int'l Bhd. Of Teamsters Pension Plan*, 188 F.3d 895, 903 (7th Cir. 1999) (holding plan administrators not obligated to provide outdated plan documents to plan participants under ERISA); *Alward v. Vail Resorts*, 2006 WL 2846528, at *6 (D. Colo. Sept. 29, 2006); *Femino v. NFA Corp.*, 2006 WL 1997626, *7 (D.R.I. July 17, 2006); *Leung v. Skidmore, Owings & Merrill, LLP,* 213 F. Supp. 2d 1097, 1105 (N.D. Cal. 2002). *See also Vogel v. Indep. Fed. Sav. Bank*, 728 F. Supp. 1210, 1227 & n.26 (D. Md. 1990) ( holding purpose of ERISA was furthered by allowing request for plan information just a few months after plan's termination but noting that if the information were to occur many years after the plan's termination, the request could properly be refused).

Here, as attested to in Defendants' discovery responses, which were submitted by Plaintiff on the current motion, Defendants, having conducted a diligent search, do not possess

versions of the Union Plan earlier than the restated and amended plan dated January 1, 1985.[6] The absence of a statutory requirement that prior versions of plan must be maintained for more than six years, together with those decision denying any right to outdated or prior versions of plan, counsels against holding that these Defendants' were required to maintain any versions of the plan that might have been  applicable during Plaintiff's employment, which ended nineteen years before he inquired about benefits.  These factors also counsel against holding that the reliance upon plan documents restated and amended after the termination of Plaintiff's employment was arbitrary and capricious.

Moreover, Plaintiff bears the burden of demonstrating that he is entitled to benefits and that the decision of the administrator was arbitrary and capricious. *Tocker v. Philip Morris Cos. Inc.*, 470 F.3d 481, 489-90 (2d Cir. 2006).   Plaintiff has not submitted any documentary or testimonial evidence to either this Court or the plan administrator as to how the version of the plan considered by the administrator may have differed from the plan as it was in effect while Plaintiff was employed. [7]   Plaintiff may not rely on the unsupported assertion that the documents

_____

[6] There is no indication in the record that Plaintiff ever made a motion challenging the efficacy of Defendants' search for prior versions which included a search of AFA's archives and a request that the plan's actuaries (which were apparently the plan's actuaries for thirty years) search for such document.

[7]The instant case is distinguishable from *Strom v. Siegel, Fenchel & Peddy*, *P.C. Profit Sharing Plan*, 497 F.3d 234 (2d Cir. 2007), relied upon by Plaintiff.  Preliminarily, the court notes that Plaintiff's quotation of  *Strom* is misleading. (*See* Pl.'s Supp. Brief at p.5.)  In *Strom*, the court held that  "where the plan administrator has denied a claimant's very status as a plan participant and consequently refused to produce plan-related documents - which the claimant had specifically and repeatedly requested- *we hold as a matter of law, the plan cannot make the requisite showing concerning the knowing and voluntary nature of the claimant's alleged waiver of his or rights to administrative review*.." *Id.* at 244 (italics added). Plaintiff's quotation of *Strom* omits the italicized portion without any indication thereof.  There is no issue of waiver in this case as there was in *Strom* and the *Strom* court's referral to the refusal to provide plan

reviewed by the administrator and now before this Court "appear" not to be relevant. (Pl.'s Mem. in Opp. at 2.) Conjecture and surmise are insufficient to defeat a motion for summary judgment. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

The decision denying Plaintiff benefits under the Union Plan was neither arbitrary nor capricious and Defendants are entitled to summary judgment thereon.

## B. The Non-Union and MPP Plans

The Non-union Plan provides that it is effective January 1, 1968. As set forth earlier, that plan provides that management employee shall automatically become participants but no benefits were payable unless the employee was an employee at the time of retirement. It also provides that upon termination of the plan, all participants shall be fully vested and entitled to an allocation from the Plan under certain circumstances, including being an employee at the time of termination of the plan.

Defendants have submitted evidence that the submitted plan "was in effect when Plaintiff contends he first became a member of management" and that the plan was terminated in December 1972. Plaintiff having had ample opportunity to conduct discovery and garner evidence to the contrary, has put forth no admissible evidence to raise any issue as to these facts. Further, there is also no dispute that Plaintiff left AFT's employ in January 1972, prior to the plan's termination.

---

documents was in that context. Nor was there a refusal to provide plan documents in this case. Plaintiff was provided a copy of the Union Plan's Plan Summary Description and advised to inform AFA "if additional information is needed." (Greenberger Aff. Ex. 8.) Finally, there was no refusal in this case by the Administrator to decide Plaintiff's claims. As discussed earlier, Plaintiff never raised any "bridging claim" with the Administrator. Also, once Plaintiff made clear he was claiming under not only the Union Plan but the Non-union Plan, his claim under the Non-Union Plan was addressed by the administrator.

Given that Plaintiff was not an employee at the time the Non-union Plan was terminated, the administrator's decision that Plaintiff was not entitled to benefits thereunder was neither arbitrary nor capricious. Nor is it rendered arbitrary or capricious by the fact that the Non-union Plan was not initially addressed by the administrator. Neither Plaintiff's initial inquiry nor the letter by his counsel which initiated an appeal on his behalf made any reference to a claim based on his service in a non-union capacity or advised that Plaintiff was employed in a managerial capacity so as to alert the plan administrator to such a potential claim. When such a possibility was finally raised in an October 17, 2005 letter, Plaintiff was thereafter advised that he had not met the Non-union Plan's vesting requirements.

Nor was the administrator's decision denying Plaintiff benefits under the MPP arbitrary or capricious. Plaintiff was not employed with AFA when the MPP was established on December 31, 1972. He was not eligible to participate until he returned as a management employee in January 3, 1977. However, he did not complete one year of service as required under the plan, having resigned in December 1977. In addition, because he was not employed on January 1, 1978, even if he had worked the entire prior year, he did not become a participant because under the plan eligible employees become a participant "as of the first day of the Plan Year next following the date on which such Employee met the eligibility requirements . . . provided said Employee was still employed on such date." (Greenberger Aff. Ex. 3, ¶3.3.) Nor did plaintiff's employment by AFA in 1986 render him a participant for the same reasons. He did not complete on year of service during 1986 and he was not employed at AFA on January 1, 1987.

Plaintiff reliance on the assertion that he was told prior to his re-employment in 1977 that

his prior employment would be "bridged" with his then new employment so that he would be "vested" in unavailing. First, there is no evidence that he presented this claim to the plan administrator. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) ("in reviewing decisions of plan fiduciaries under the arbitrary and capricious standard, district courts may consider only the evidence the fiduciaries themselves considered"). Second, to the extent he is claiming promissory estoppel, he has neither pled such a cause of action, nor submitted evidence to support all the elements of such a claim. *See Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 85-86 (2d Cir. 2001) ( "[P]rinciples of estoppel can apply in ERISA cases under extraordinary circumstances. . . . A plaintiff must satisfy four elements to succeed on a claim of promissory estoppel:'(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.'" In addition to the four basic elements, a plaintiff must "point to circumstances 'beyond the ordinary.'") (quoting *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151 (2d Cir. 1999); *accord Weinreb v. Hosp. for Joint Diseases,* 404 F.3d 167, 172-73 (2d Cir. 2005).

## IV. Plaintiff's Remaining Claims

Having determined that Plaintiff is not entitled to benefits because, as determined by the plan administrator, he did not meet the plan's vesting requirements, Plaintiff's other claims must fall as well.

ERISA creates a right of action only for participants, beneficiaries, and fiduciaries of covered benefits plans. 29 U.S.C. § 1132(2)(3); *Mass Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 139-40 (1985); *Nechis v. Oxford Health Plans,* 421 F.3d 96, 101 (2d Cir. 2005). A plaintiff must fit within one of these categories in order to have standing to sue under ERISA.

*Connecticut v. Physicians Health Serv.,* 287 F.3d 110, 112 (2d Cir. 2002).  The statute itself

defines "participant" as "any employee or former employee of an employer . . . who is or may

become eligible to receive a benefit of any type from an employee benefit plan. . . ."  29 U.S.C. §

1002(7).  In *Firestone Tire & Rubber v. Bruch,* 489 U.S. 101 (1989), the Court held that with

respect to former employees  "the term participant is naturally read to mean former employees

who have . . . a reasonable expectation of returning to covered employment or who have a

colorable claim to vested benefits."  *Id.* at 117.  "A former employee who has neither a

reasonable expectation of returning to covered employment nor a colorable claim to vested

benefits, however, simply, does not fit within the phrase 'may become eligible.'"  *Id.*

Having determined that Plaintiff has no claim to vested benefits,  his remaining claims,

which are grounded in alleged breaches of fiduciary duty are dismissed.

### Conclusion

Defendants' motion for summary judgment is granted.   Upon entry of judgment, the

Clerk of Court is directed to close this case.

Dated: Central Islip, New York
          September 30, 2008


/s/_____
Denis R. Hurley
United States Senior District Judge